IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–02346–EWN–BNB

CHRISTINA QUATTRONE, an Individual,

      Plaintiff,

v.

NOBLE LOGISTIC SERVICES, INC., a Corporation,

      Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is a Title VII case.  Plaintiff Christina Quattrone asserts that her former employer Defendant Noble Logistic Services, Inc.: (1) discriminated  and retaliated against her on the basis of her sex and subjected her to sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (2006) ("Title VII"); and (2) engaged in various state law violations.  This matter comes before the court on "Defendant's Motion for Summary Judgment," filed July 12, 2005.  Jurisdiction is premised upon federal question and supplemental jurisdiction, 28 U.S.C. §§ 1331, 1367 (2006), respectively.

## FACTS

### 1.    *Factual Background*

Plaintiff, a female, worked for Defendant for approximately eleven months.  (Verified

Compl. and Request for Jury Trial ¶¶ 9, 10 [filed Nov. 12, 2004] [hereinafter "Compl."].)

Defendant is a corporation that operates a delivery service in multiple states.  (Def.'s Mot. for

Summ. J., Mem. Br. in Supp. of Mot. for Summ. J., Statement of Undisputed Facts ¶ 2 [filed July

12, 2005] [hereinafter "Def.'s Br."]; *admitted at* Resp. Br. in Opp'n to Def.'s Mot. for Summ. J.,

Resp. to Statement of Undisputed Material Facts ¶ 2 [filed Aug. 8, 2005] [hereinafter "Pl.'s

Resp."].)  Plaintiff began working for Defendant in November 2002 as a delivery driver.  (*Id*.,

Statement of Undisputed Facts ¶¶ 3–4; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed

Material Facts ¶¶ 3–4.)  In February 2003, Plaintiff accepted a promotion to the position of office

assistant, and began working directly for Defendant's general manager of its Denver office.  (*Id*.,

Statement of Undisputed Facts ¶¶ 11–12; *admitted at* Pl.'s Resp., Resp. to Statement of

Undisputed Material Facts ¶¶ 11–12.)

Plaintiff's lawsuit arises out of the alleged behavior of Defendant's employee Chris

Cassels.  (*Id*., Statement of Undisputed Facts ¶ 16; *admitted at* Pl.'s Resp., Resp. to Statement of

Undisputed Material Facts ¶ 16.)  Plaintiff first met Cassels on September 29, 2003, upon his

arrival for a two-week visit to Defendant's Denver office.  (*Id*., Statement of Undisputed Facts ¶¶

17–18; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 17–18.)

Plaintiff alleges that Cassels harassed her nearly every day during his visit.

### a.   Cassels's First Week

On September 30, 2003, Cassels divulged information to Plaintiff regarding his divorce. (*Id.*, Statement of Undisputed Facts ¶ 22; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 22.)  Later the same day, Cassels asked Plaintiff if she wanted to "go for drinks with him." (*Id.*, Statement of Undisputed Facts ¶ 26, Ex. A at 124 [Quattrone Dep.]; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 26.)  Plaintiff declined Cassles's invitation. (*Id.*)  Cassels neither became angry nor threatened Plaintiff's job due to her decline. (*Id.*)

On October 2, 2003, after visiting with clients, Cassels asked Plaintiff to talk about client issues over a meal with him. (*Id.*, Statement of Undisputed Facts ¶¶ 30–31; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 30–31.)  While at the restaurant, Cassles told Plaintiff he was interested in dating her and asked if she wanted to visit a certain bed and breakfast. (*Id.*, Statement of Undisputed Facts ¶¶ 32–33; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 32–33.)  Plaintiff stated that she was not interested in either dating Cassels or visiting the bed and breakfast. (*Id.*, Statement of Undisputed Facts ¶¶ 33–34; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 33–34.) Cassels then implied that were she to date him, she would be free of financial concerns. (*Id.*, Statement of Undisputed Facts ¶ 34; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 34.)  At the end of the conversation, Plaintiff felt "insulted." (*Id.*, Statement of Undisputed Facts ¶ 35, Ex. A at 142 [Quattrone Dep.]; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 35.)  When the two left the restaurant, Cassels asked

Plaintiff if she wanted to "get another drink or watch a movie."  (*Id.*, Statement of Undisputed Facts ¶ 36, Ex. A at 144 [Quattrone Dep.]; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 36.)  Plaintiff declined and went home.  (*Id.*)

On October 3, 2003, Plaintiff drove Cassels to the airport.  (*Id.*, Statement of Undisputed Facts ¶ 38; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 38.) Cassels planned to fly home for the weekend and return to Defendant's Denver office the following work-week.  (*Id.*)  Upon arriving at the airport, Cassels invited Plaintiff to "come in with him and hang out."  (*Id.*, Statement of Undisputed Facts ¶ 39, Ex. A at 147 [Quattrone Dep.]; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 39.)  Plaintiff declined, and Cassels wished Plaintiff a pleasant weekend.  (*Id.*, Statement of Undisputed Facts ¶ 40; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 40.)  Over the weekend of October 4 to October 5, 2003, Cassels contacted Plaintiff once by phone.  (*Id.*, Statement of Undisputed Facts ¶ 41; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 41.)  Plaintiff "brushed him off."  (*Id.*)

### b.   *Cassels's Second Week*

On October 6, 2003, Cassels returned to Denver.  (*Id.*, Statement of Undisputed Facts ¶ 42; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 42.)  From October 6 through October 8, 2003, Cassels and Plaintiff visited Defendant's clients during the day and Plaintiff attended evening classes.  (*Id.*, Statement of Undisputed Facts ¶¶ 42, 44–45, 47–50; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 42, 44–45, 47–50.)  After the client visits on each of these days, Cassels made advances toward Plaintiff,

which she refused.  On October 6, 2003, Cassels asked Plaintiff if she wanted to "go for drinks or watch a movie."  (*Id.*, Statement of Undisputed Facts ¶¶ 42–43; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 42–43.)  Plaintiff declined and went to class, during which she received another invitation to meet Cassels for drinks.  (*Id.*, Statement of Undisputed Facts ¶ 44; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 44.)  On October 7, 2003, Cassels told Plaintiff he wanted to watch a certain hockey game, and asked Plaintiff to "[c]ome party with [him]."  (*Id.*, Statement of Undisputed Facts ¶¶ 45–46; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 45–46.)  Plaintiff declined and went to class, during which she received multiple messages from Cassels asking what she was doing.  (*Id.*, Statement of Undisputed Facts ¶ 47; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 47.)  On October 8, 2003, Cassels asked Plaintiff to "go for drinks" with him.  (*Id.*, Statement of Undisputed Facts ¶¶ 48–49; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 48–49.)  Plaintiff declined and went to class, during which she received text messages from Cassels extending invitations to "come out with him." (*Id.*, Statement of Undisputed Facts ¶¶ 49–50, Ex. A at 168 [Quattrone Dep.]; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 49–50.)

On October 9, 2003, Plaintiff felt too ill to work.  (*Id.*, Statement of Undisputed Facts ¶ 51; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 51.)  Plaintiff alleges that Cassels: (1) told her she could call him later if she wanted to "do anything;" (2) told her he wanted to "be there" for her and "just sit there, hold [her] . . . hand" and make her feel calm; and (3) called her several times during the evening "asking [her] out."  (*Id.*, Statement of

Undisputed Facts ¶¶ 56–57, Ex. A at 181–82 [Quattrone Dep.]; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 56–57.)  On the same date, Plaintiff, Cassels, one of Defendant's managers, and several of Defendant's ex-employees made a series of calls regarding rumors about the ex-employees' intentions to start a company that would compete with Defendant.  (*Id.*, Statement of Undisputed Facts ¶ 52; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 52.)  Plaintiff was romantically involved with the son of one of the ex-employees who Cassels suspected was competing.  (*Id.*, Statement of Undisputed Facts ¶ 53; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 53.)

On October 10, 2003, Plaintiff accompanied Cassels on visits to various clients.  (*Id.*, Statement of Undisputed Facts ¶ 58; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 58.)  Plaintiff felt Cassels was ignoring her and complained to him.  (*Id.*, Statement of Undisputed Facts ¶ 59; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 59.)  Cassels became angry and told Plaintiff that her interaction with a competing ex-employee's son made it appear that she was involved with a competing business. (*Id.*, Statement of Undisputed Facts ¶¶ 60–61; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 60–61.)  Later the same day, Plaintiff told Cassels she was prepared to quit her job and emphasized that she had no role in the competing business.  (*Id.*, Statement of Undisputed Facts ¶ 62; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 62.)  Cassels responded that he did not want Plaintiff to quit and told Plaintiff "[p]romise me you're telling the truth and not fucking me over and I'll tell corporate you said all the right things." (*Id.*, Statement of Undisputed Facts ¶¶ 63–64, Ex. A at 198 [Quattrone Dep.]; *admitted*

*at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 63–64.)  Plaintiff interpreted

Cassels's statement to mean that if she assured him she was not part of the competing business, he

would dispel any concerns that Plaintiff was a disloyal employee.  (*Id.*, Statement of Undisputed

Facts ¶ 65; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 65.)

Plaintiff testified that she did not interpret Cassels's statement to be solicitation of sexual favors in

exchange for a positive statement to Defendant's corporate executives.  (*Id.*, Ex. A at 202–03

[Quattrone Dep.].)

Plaintiff does not assert that she had any further improper interaction with Cassels until

October 23, 3003, when she asked Cassels whether he still wanted to terminate her employment.

(*Id.*, Statement of Undisputed Facts ¶¶ 66–68; *admitted at* Pl.'s Resp., Resp. to Statement of

Undisputed Material Facts ¶¶ 66–68.)  Plaintiff asserts that Cassels responded "don't even

mention that again.  If you do, I will fire you.  Just do your job and everything will be fine."  (*Id.*,

Statement of Undisputed Facts ¶ 68; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed

Material Facts ¶ 68.)

### c.      *Termination of Plaintiff's Employment*

On or about October 20, 2003, Scott Riggs became general manager of Defendant's

Denver office.  (*Id.*, Statement of Undisputed Facts ¶ 69; *admitted at* Pl.'s Resp., Resp. to

Statement of Undisputed Material Facts ¶ 69.)  As general manager, Riggs was Plaintiff's

supervisor and possessed direct authority and control over Plaintiff's employment.  (*Id.*,

Statement of Undisputed Facts ¶¶ 70–71; *admitted at* Pl.'s Resp., Resp. to Statement of

Undisputed Material Facts ¶¶ 70–71.)  On October 20, 2003, Riggs witnessed an altercation

between Plaintiff and one of Defendant's drivers.  (*Id.*, Statement of Undisputed Facts ¶ 74; *deemed admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 74.)[1]  On October 21, 2003, Riggs accompanied Plaintiff on visits with clients and testified he was not impressed "with how [Plaintiff] conducted herself or with the way she spoke to people."  (*Id.*, Statement of Undisputed Facts ¶ 75, Ex. C at 21 [Riggs Dep.]; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 75.)  On several subsequent occasions, Riggs and employees who reported to Riggs observed Plaintiff acting in a demeaning and disrespectful manner toward Defendant's drivers.  (*Id.*, Statement of Undisputed Facts ¶ 76; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 76.)  On October 23, 2003, Riggs became involved in a verbal altercation with Plaintiff.  (*Id.*, Statement of Undisputed Facts ¶ 77; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 77.)

On October 24, 2003, Riggs gave Plaintiff two written disciplinary notices for performance problems and terminated her employment.  (*Id.*, Statement of Undisputed Facts ¶¶ 81, 86–87; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 81, 86–87.)  The parties do not dispute that Plaintiff received disciplinary warnings because: (1) Riggs believed Plaintiff had moved or confiscated her personnel file in order to delete negative content therein; and (2) Plaintiff knowingly shared confidential salary information with another employee.

---

[1]Plaintiff denies, but does not substantively controvert, this allegation.  Instead, Plaintiff relies on her former supervisor's testimony to support her contention that she was "strict" with the drivers.  (Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 74.)  Therefore, I deem this proffered factual allegation admitted as true.

(*Id.*, Statement of Undisputed Facts ¶¶ 82–85; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 82–85.)

**2.      *Procedural History***

On November 12, 2004, Plaintiff filed a complaint in this court.  (Compl.)  Plaintiff asserts five claims against Defendant: (1) sexual harassment in violation of Title VII; (2) sexual discrimination in violation of Title VII; (3) retaliation in violation of Title VII; (4) breach of contract; and (5) promissory estoppel.  (Compl. ¶¶ 74–137.)  On December 1, 2004, Defendant filed an answer.  (Answer [filed Dec. 1, 2004].)

On July 12, 2005, Defendant filed a motion for summary judgment.  (Def.'s Br.)  Defendant argues that Plaintiff cannot maintain her claims because Plaintiff cannot: (1) demonstrate sexual harassment so severe as to create a hostile work environment; (2) demonstrate sexual harassment wherein the harasser required compliance in exchange for job benefits; (3) establish a *prima facie* case for discrimination, or, if she can, Plaintiff cannot debunk Defendant's reasons for terminating her as pretextual; (4) establish a *prima facie* case for retaliation; and (5) demonstrate the existence of sufficiently definite or binding promises to support her claims for breach of contract or promissory estoppel.  (Def.'s Br. at 14–27; Reply Br. in Supp. of Mot. for Summ. J. at 8–14 [filed Aug. 23, 2005] [hereinafter "Def.'s Reply"].)  On August 8, 2005, Plaintiff filed a response to Defendant's motion.  (Pl.'s Resp.)  On August 23, 2005, Defendant filed a reply brief in support of its motion.  (Def.'s Reply.)

## ANALYSIS

### 1.    Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed

in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

**2.     Evaluation of Claims**

    **a.     Sexual Harassment**

Defendant moves for summary judgment on Plaintiff's claim for discriminatory sexual harassment. (Def.'s Br. at 14–19.) "Courts have consistently recognized two distinct categories of sexual harassment claims: *quid pro quo* sexual harassment, and hostile work environment sexual harassment." *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir. 1987); *accord Meritor*, 477 U.S. at 65–66. Here, Plaintiff argues both. I address each claim in turn.

       **i.     Hostile Work Environment Sexual Harassment**

In her complaint, Plaintiff alleges that she was subjected to "unwelcome and sexually offensive conduct sufficiently severe and pervasive as to alter the terms and conditions of her employment and create an abusive work environment," for which Defendant is liable because "it knew, or should have known, of the . . . unlawful sexual harassment and did not take immediate and appropriate corrective action." (Compl. ¶¶ 76, 80.) Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1) (2006). This statutory provision prohibits subjecting an employee to sexual harassment creating a hostile work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–66 (1986). The Tenth Circuit has held:

> Title VII's prohibition of employment discrimination based on sex
> encompasses hostile work environment sexual harassment.  This
> harassment occurs where [sexual] conduct has the purpose or effect
> of unreasonably interfering with an individual's work performance
> or creating an intimidating, hostile, or offensive working
> environment.  To form the basis of a claim, the sexual harassment
> must be sufficiently severe or pervasive to alter the conditions of
> [the victim's] employment and create an abusive working
> environment.  Based on the totality of the circumstances, the
> environment must be perceived both subjectively and objectively as
> abusive.

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) (citations omitted) (internal

quotation marks omitted) (alterations in original).

To establish that a hostile work environment existed, Plaintiff must demonstrate that: (1)

she is a member of a protected group; (2) she was subjected to unwelcome harassment; (3) the

harassment was based on sex; and (4) due to its severity or pervasiveness, the harassment altered

a term, condition, or privilege of Plaintiff's employment and created an abusive working

environment.  *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 797, 798 (10th Cir. 1997).

Defendant argues that Plaintiff cannot demonstrate sexual harassment so severe or pervasive as to

alter the conditions of her employment.  (Def.'s Br. at 14–19.)  In her brief in opposition to

Defendant's motion, Plaintiff essentially confesses her hostile work environment claim.  Plaintiff

asserts that Defendant's argument regarding the severity and pervasiveness of the sexual

harassment is inapplicable, because "this case is a *quid-pro-quo* [sic] sexual harassment case."

(Pl.'s Resp. at 10.)  Plaintiff does not further address her hostile work environment claim and, in

doing so, wholly fails to meet her burden to demonstrate the existence of a genuine issue of

material fact for trail on her claim.  *See Celotex*, 477 U.S. at 325.  Defendant is thus entitled to summary judgment thereupon.

ii.    ***Quid Pro Quo Sexual Harassment***

Plaintiff argues that Defendant is liable for Cassles's *quid pro quo* sexual harassment.[2]  (*Id.* at 11.)  With respect to *quid pro quo* harassment claims, "'[w]hen a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII.'"  *Smith v. Cashland, Inc.*, 193 F.3d 1158, 1160 (10th Cir. 1999) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754 [1998]).  Here, Plaintiff asserts that her termination resulted from her rejection of Cassles's sexual harassment. (Pl.'s Br. at 11.)  In support of her assertion, Plaintiff argues: (1) her former supervisor regarded Plaintiff as a good employee, and she received "several promotions over the first [ten] months of her employment;" (2) factual disputes exist surrounding whether Cassels or Riggs terminated her

---

[2]Defendant argues that Plaintiff waived her claim for *quid pro quo* sexual harassment because she did not assert it in the preliminary pretrial order in this case.  (Def.'s Br. at 14.) "[C]laims, issues, . . . or theories of damages not included in the pretrial order are waived even if they appeared in the complaint."  *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002); *see* Fed. R. Civ. P. 16(e) (2006).  Importantly, pretrial orders "should be 'liberally construed to cover any of the legal or factual theories that might be embraced by [their] language.'"  *Koch v. Koch Indus.*, 203 F.3d 1202, 1220 (10th Cir. 2000) (quoting *Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 818 [10th Cir. 1979]).  Liberal construction of the preliminary pretrial order in this case allows for a *quid pro quo* sexual harassment claim.  To wit, Plaintiff alleges that Defendant subjected her to "(1) unwelcome sexual harassment; [and] (2) unwelcome hostile work environment of sexual harassment."  (Preliminary Pretrial Order [filed May 16, 2005].)  I find that Plaintiff did not waive her claim and analyze it accordingly.

employment; and (3) the close temporal nexus between Plaintiff's termination and Cassles's

harassment establishes causation.  (Pl.'s Resp. at 11–13.)

Plaintiff's claim must fail.  Plaintiff wholly ignores that "[t]he gravamen of a *quid pro quo*

sexual harassment claim is that tangible job benefits are conditioned on an employee's submission

to conduct of a sexual nature and that adverse job consequences result from the employee's

refusal to submit to the conduct."  *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1414 (10th Cir.

1987).  In her argument, Plaintiff does not reference a single incident of Cassels's alleged sexually

harassing conduct to establish that her job benefits were conditioned upon her submission thereto.

Rather, Plaintiff reverse engineers a network of tangential links to arrive at her result.  In essence,

Plaintiff argues that her job benefits were conditioned upon her submission to Cassels's

unspecified conduct because: (1) she was a good employee, (2) Cassels was the driving force

behind her termination, and (3) Plaintiff was terminated in a point close in time to Cassels's

unspecified conduct.  (Pl.'s Resp. at 11–13.)  Plaintiff's speculative argument cannot serve to

satisfy her burden in summary judgment.  *See Self v. Peter Crum, M.D.*, 439 F.3d 1227, 1230

(10th Cir. 2006) (noting mere speculation, conjecture, or surmise cannot defeat summary

judgment).  Plaintiff has done nothing to satisfy her burden to establish that Cassels's conduct

conveyed demands that would result in a certain employment-related outcome, depending on

whether Plaintiff acquiesced or refused them.  *See Burns v. Snow*, 130 Fed. App. 973, 984 (10th

Cir. May 16, 2005) (holding plaintiff's claim inadequate where plaintiff failed to demonstrate that

tangible job benefits or reprisal were premised upon whether she granted or refused sexual

requests); *Hicks*, 833 F.2d at 1414 (holding plaintiff's claim inadequate given lack of explicit or

implicit suggestion to Plaintiff that her employment was conditioned upon granting sexual favors to her supervisors).  Simply put, Plaintiff has not shown that Cassels expressly or impliedly promised her benefits if she submitted to his sexually harassing conduct or threatened punishment if she did not submit.[3]

Even if she had, an employer may refute a claim of *quid pro quo* harassment by establishing that it terminated the employee for legitimate business reasons and not because the employee refused to submit to sexual demands.  *Smith*, 193 F.3d at 1160; *see Hicks*, 833 F.2d at 1414 (upholding trial court's decision granting summary judgment against plaintiff where trial court found plaintiff was terminated because of her inadequate job performance, not her refusal to acquiesce in her supervisors' sexual conduct).  Here, Plaintiff concedes that Defendant terminated her employment because: (1) she shared confidential salary information; and (2) Plaintiff's supervisor, Riggs, believed she had misplaced or destroyed her own personnel file.  Plaintiff directly admits the former.  (Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 84–85; Def.'s Br. Ex. A at 264–66 [Quattrone Dep.].)  Plaintiff also admits the latter, but attempts to discount Riggs's belief by speculating it was based on Cassels's suggestion.  (*Id.* at 12.)  Specifically, Plaintiff cites Cassels's testimony regarding a phone conversation with Riggs concerning Plaintiff's inability to find her personnel file:

_____

[3]Indeed, Plaintiff admits that whether to terminate her employment was Riggs's decision. (Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 80.)  Further, quite at odds with a *quid pro quo* claim, Plaintiff testified that Cassels essentially asked Plaintiff to quit working for Defendant so that she could date him when he told her "the only way I could date you is if you didn't work for [Defendant]."  (Def.'s Br., Ex. A at 141 [Quattrone Dep.].)

> [Cassels] said, "Well, I know [Plaintiff] knows where [the files] are because she
> was the one keeping track of the files . . . after [Lawley] had gone." And [Riggs]
> said, "Well, [Plaintiff] doesn't know where [the file] is." So then [Cassels] said
> "Well, then, [Plaintiff] probably took it."

(*Id*., Ex. 6 at 149 [Cassels Dep.].)  From this testimony, Plaintiff implies that Riggs did not

himself conclude that Plaintiff stole, misplaced, or destroyed her personnel file.  Plaintiff's attempt

to substitute Cassels's suggestion for Riggs's reasoned opinion is entirely speculative, and thus

ultimately unavailing to raise a genuine issue of fact as to *quid pro quo* harassment.  *See Self*, 439

F.3d at 1230 (noting speculation cannot serve to create a genuine issue of fact for summary

judgment).  Based on the foregoing, Defendant is entitled to summary judgment on Plaintiff's first

claim.

### b.    *Discrimination Based on Sex*

Defendant moves for summary judgment on Plaintiff's second claim for sex discrimination.

(Def.'s Br. at 19–21.)  Under Title VII, it is an "unlawful employment practice for an employer . .

. to discriminate against any individual . . . because of such individual's . . . sex." *Desert Palace,*

*Inc. v. Costa*, 539 U.S. 90, 92–93 (2003) (citing 42 U.S.C. § 2000e–2[a][1]).  In her complaint,

Plaintiff alleges that Defendant discriminated against her based on her sex in myriad ways:

> (a) [s]ubjecting [Plaintiff] to a continual pattern and practice of adverse
> employment and work conditions and requirements, including unlawful sexual
> harassment and sexual discrimination, unlawful retaliation, adverse salary service
> [sic] and working conditions and requirements, while and [sic] not imposing the
> same adverse conditions and requirements on similarly situated male employees
> who performed the duties of [Plaintiff's] position of Assistant General Manager,
> before and after [Plaintiff] served in such position, and by [Defendant] treating said
> male employees more favorably than [Plaintiff] concerning said issues;
> (b) [d]ischarging [Plaintiff], without just cause, for pretextual and unlawful reasons
> unworthy of belief;

(c) [d]ischarging [Plaintiff] and replacing her with Sean Jude, [Defendant's] employee with fewer qualifications;
(d) [s]ubjecting [Plaintiff] to sexually discriminatory invasions of privacy and sexually discriminatory and harassing unwanted interrogations; and
(e) . . . providing [Plaintiff] a lesser salary, compensation, retirement contributions, and fewer employment benefits and privileges[] than [Defendant] paid and provided the two male individuals who occupied [sic] performed the duties of the

position of [Defendant's] Assistant General Manager. . .

(Compl. ¶ 88.)  As ought be evident, it is rather difficult to distill Plaintiff's precise claims. Plaintiff appears to claim Defendant discriminated against her by its: (1) termination of her employment; (2) discrepancies in salary and benefits; and (3) privacy invasion and sexual harassment.  (*Id.*)  Defendant argues that Plaintiff cannot maintain her claim for Title VII discrimination because she cannot demonstrate that her sex motivated Defendant's actions, or, if she can, Plaintiff cannot demonstrate Defendant's reasons for its actions were a pretext for unlawful discrimination.  (Def.'s Br. at 19–20.)

In analyzing claims for Title VII discrimination, courts apply the framework of shifting evidentiary burdens outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  As a threshold matter under *McDonnell Douglas*, Plaintiff must establish a *prima facie* case of discrimination.  *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 922 (10th Cir. 2001).  The "burden of establishing a *prima facie* case" is "not onerous."  *Id.* (citation and internal quotation marks omitted).  "Establishment of a *prima facie* case creates a presumption of unlawful discrimination."  *Tex. Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981). If Plaintiff establishes a *prima facie* case, the burden of production then shifts to Defendant to "articulate a legitimate, nondiscriminatory reason for the adverse employment action."  *Wells v.*

*Colo. Dep't of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003) (citing *McDonnell Douglas*, 411 U.S. at 792).  If Defendant articulates a proper basis for its actions, the burden shifts back to Plaintiff to demonstrate that the reason advanced by Defendant is a pretext for unlawful discrimination.  *Burdine*, 450 U.S. at 255–56.

### i.      *Prima Facie Case*

To establish a *prima facie* case of Title VII discrimination, Plaintiff must demonstrate that: (1) she is a member of a protected class; (2) Defendant took adverse employment action against her; and (3) Defendant imposed its adverse employment action under circumstances giving rise to an inference of discrimination.  *See Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000).  As a woman, Plaintiff is a member of a protected class, satisfying the first prong.  *See Green v. N.M.*, 420 F.3d 1189, 1196 (10th Cir. 2005)

Adverse employment action, the second prong, is a fundamental requirement of anti-discrimination claims under Title VII.  *See Wells*, 325 F.3d at 1212 (holding demonstration of adverse employment action required to maintain Title VII claim).  Generally, for an employment action to be considered adverse, it must have caused an employee to experience a significant change in employment status, such as hiring, firing, failure to be promoted, reassignment with significantly different responsibilities, or imposition of a significant change in benefits.  *Annett v. University of Kansas*, 371 F.3d 1233, 1237 (10th Cir. 2004).  Thus, Plaintiff's discharge is unquestionably a proper subject of her claim.  It is difficult to ascertain how either the sexually discriminatory invasions of privacy or the discrepancies in pay and benefits that Plaintiff alleges, without more, significantly changed her employment status.  Plaintiff offers neither evidence nor

argument to support her contention beyond the allegations in her complaint.  (Pl.'s Resp., *passim.*)  Plaintiff may not rest solely on the allegations in the pleadings, but most designate specific facts to demonstrate a genuine issue of fact for trial.  *See Celotex*, 477 U.S. at 324.  Since neither the privacy invasions nor the compensation discrepancies can properly be characterized as adverse employment actions, neither is properly the subject of Plaintiff's discrimination claim.

Regarding the third prong, Defendant argues that Plaintiff cannot establish that Defendant acted with discriminatory motive or intent, as is required to maintain a Title VII claim.  (Def.'s Br. at 19.)  Plaintiff's only argument supporting the existence of discriminatory circumstances surrounding Defendant's action is her bald assertion that "[c]learly, Cassels made sexual advances on [Plaintiff] and terminated her when she rebuffed these advances because [she] is a woman." (Pl.'s Resp. at 13.)  Plaintiff makes no reference to the evidence of record to bolster her assertion. (*Id.*)  Conclusory allegations without citation to the record are insufficient to create a genuine issue of fact to defeat summary judgment.  *L & M Enters. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000).  Moreover, in response to Defendant's motion for summary judgment, Plaintiff may not rest solely on the allegations in the pleadings, but must designate specific facts to demonstrate a genuine issue of fact for trial with respect to discrimination.  *See Celotex*, 477 U.S. at 324.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's second claim.

### c.      Retaliation

Defendant moves for summary judgment on Plaintiff's claim for unlawful retaliation.

(Def.'s Br. at 21–22.)  "Title VII prohibits an employer from discriminating against an employee

in retaliation for opposing unlawful employment practices."  *Penry v. Federal Home Loan Bank*,

155 F.3d 1257, 1263 (10th Cir. 1998) (citing 42 U.S.C. § 2000e–3[a]).  Plaintiff asserts that

Defendant retaliated against her for her protected opposition to sexual harassment by discharging

her and interfering with her search for subsequent employment.  (Compl. ¶¶ 93–107.)  Defendant

argues that it is entitled to summary judgment because Plaintiff cannot establish a causal

connection between her protected opposition and termination.  (Def.'s Br. at 21–22.)  In

analyzing claims for Title VII retaliation, courts apply the *McDonnell Douglas* framework

described above.  *Wells*, 325 F.3d at 1212.

### i.      Prima Facie Case

To establish a *prima facie* case of retaliation, Plaintiff must demonstrate that: (1) she

participated in protected opposition to Title VII discrimination; (2) Defendant's adverse

employment action against Plaintiff was subsequent to or contemporaneous with her protected

opposition; and (3) a causal connection exists between her protected opposition and Defendant's

adverse action.  *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 985 (10th Cir. 1996); *Penry*, 155

F.3d at 1263–64.

In her complaint, Plaintiff alleges that she engaged in protected opposition to

discrimination by rejecting Cassels's advances.  (Compl. ¶ 97.)  In her response brief to

Defendant's motion, Plaintiff abandons the opposition theory pled in her complaint, and asserts

instead that she engaged in protected opposition by filing a charge with the Equal Employment Opportunity Commission ("EEOC") on November 12, 2003.  (Pl.'s Resp. at 15–16.)  For purposes of Title VII retaliation, "[p]rotected opposition can range from filing formal charges to voicing informal complaints to superiors."  *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004).  Plaintiff's EEOC filing is clearly a proper subject of her complaint.

Regarding adverse employment action, Plaintiff claims that on or about November 15, 2003, Defendant contacted a company interested in hiring Plaintiff and informed the company that hiring Plaintiff would cause business relationship problems with Defendant.  (Pl.'s Resp. at 15.)  As discussed above, for an employment action to be adverse, it must have caused a significant change in employment status.  *Annett*, 371 F.3d at 1237.  In the instant case, it is undisputed that Defendant terminated Plaintiff's employment on or about October 24, 2003.  (Def.'s Br., Statement of Undisputed Facts ¶¶ 86–87; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 86–87.)  Therefore, Defendant's November 15, 2003 contact with Plaintiff's potential future employer could not and did not change her employment status with Defendant and thus cannot be an adverse employment action by definition.  *Annett*, 371 F.3d at 1237.  Plaintiff has failed to evince an adverse employment action and thus has failed to satisfy her burden to establish a *prima facie* case for her retaliation claim.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's third claim for retaliation.

### d.      *State Law Claims*

Defendant moves for summary judgment on Plaintiff's claims for breach of contract and promissory estoppel.  (Def.'s Br. at 22–27.)  Plaintiff asserts that: (1) Defendant breached an

express contract between the parties by terminating her employment; and (2) Defendant was estopped from terminating her employment based on promises it made to her.  (Compl. ¶¶ 108–37.)  Defendant argues that any promises Plaintiff describes are not sufficiently specific as to be binding, and thus cannot support Plaintiff's claims.  (Def.'s Br. at 23–27.)  In response to Defendant's motion, Plaintiff purports to withdraw her claims for breach of contract and promissory estoppel.  (Pl.'s Resp. at 16.)  Specifically, Plaintiff asserts "[i]n light of the development of the evidence in this case, [Plaintiff] respectfully requests at this time the [c]ourt dismiss without prejudice her claims for breach of contract and promissory estoppel."[4]  (*Id.*)  Plaintiff evidently overlooks that her motion to dismiss appears in her opposition brief to Defendant's motion for summary judgement, and is essentially a *non sequitur* response.  In responding to Defendant's motion, Plaintiff's burden is to designate "specific facts showing that there is a genuine issue for trial" on her claims for breach of contract and promissory estoppel.  *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006).  Apparently ignoring long and well established law, Plaintiff offers neither evidence nor argument to rebut Defendant's substantiated allegations and demonstrate a genuine issue of fact for trial regarding breach of contract and promissory estoppel.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's fourth and fifth claims.

### 3.   *Conclusions*

Based on the foregoing it is therefore ORDERED as follows:

---

[4]Not surprisingly, Defendant does not oppose Plaintiff's proposition for dismissal of her claims, but argues this court ought dismiss them with prejudice.  (Def.'s Reply at 18–19.)

1.      Defendant's motion for summary judgment (# 24) is GRANTED.

2.      The clerk shall forthwith enter judgment in favor of Defendant and against

Plaintiff, dismissing Plaintiff's claims with prejudice.  Defendant may have its costs by filing a bill

of costs within eleven days of the date of this order.

3.      The hearing scheduled for April 20, 2006, is VACATED.

Dated this 20th day of April, 2006.

                                        BY THE COURT:


                                        s/ Edward W. Nottingham
                                        EDWARD W. NOTTINGHAM
                                        United States District Judge